Case 5:17-cv-00024-EKD-JCH   Document 22   Filed 06/27/18   Page 1 of 13
Pageid#: 4142

CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
6/27/18
JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| KELLY H., | ) |
|     Plaintiff, | )    Civil Action No. 5:17-cv-00024 |
| | ) |
| v. | )    REPORT & RECOMMENDATION |
| | ) |
| NANCY A. BERRYHILL, | )    By:    Joel C. Hoppe |
| Commissioner of Social Security, | )            United States Magistrate Judge |
|     Defendant. | ) |

Plaintiff Kelly H. asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that substantial evidence does not support the Commissioner's final decision. Therefore, I recommend that the Court grant Kelly H.'s Motion for Summary Judgment, ECF No. 14, deny the Commissioner's Motion for Summary Judgment, ECF No. 18, reverse the Commissioner's final decision, and remand the case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only

whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration

2

requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Kelly H. applied for DIB and SSI on December 17, 2013, alleging disability caused by advanced degenerative disc disease, cervical stenosis, neck pain, arm pain, pelvic pain, and stomach pain. Administrative Record ("R.") 85–86, 94–95, ECF No. 9-1. She alleged onset of disability as November 10, 2013, at which time she was forty-three years old. R. 85, 94. Disability Determination Services ("DDS"), the state agency, denied her claims at the initial, R. 85–102, and reconsideration stages, R. 105–28. On November 19, 2015, Kelly H. appeared with counsel and testified about her impairments and functional limitations at an administrative hearing before ALJ Brian Kilbane. R. 55–74. Kelly H. explained that she had great difficulty performing everyday tasks, reclined for about six hours a day, experienced pain all over from her myriad impairments, underwent numerous surgeries on her neck, back, and pelvic area, and described herself as a "hermit" because she "stay[ed] at home unless [she] ha[d] a doctor's appointment," R. 72. *See* R. 57–73. The ALJ also heard testimony from a vocational expert ("VE") regarding Kelly H.'s work history and the availability of other work she could perform in the national and local economies. R. 77–84.

On January 14, 2016, ALJ Kilbane denied Kelly H.'s claims in a written decision. R. 35–46. He found that Kelly H. had severe impairments of "degenerative disc disease and spondylosis of the cervical spine status post spine surgery; degenerative joint disease of the knees; obesity; and adhesive disease of the lower abdomen." R. 37. All other impairments, including bilateral carpal tunnel syndrome and a skin infection, were deemed non-severe. R. 37–38. The ALJ next determined that Kelly H.'s impairments, either alone or in combination, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 38.

As to Kelly H.'s residual functional capacity ("RFC"),[1] the ALJ found that she could perform light work[2] as defined in the regulations except that she could "frequently climb[] ramps/stairs, kneel, and crouch (i.e., bend at the knees), [could] occasionally stoop (i.e., bend at the waist), crawl, and climb ladders/ropes/scaffolds, [could] balance unlimited, and [could] occasionally do right and left overhead reaching." R. 38; *see also* R. 38–44. Based on this RFC and the VE's testimony, the ALJ found that Kelly H. could perform her past relevant work as a store manager or as a sales clerk as generally performed in the national economy. R. 44. Alternatively, ALJ Kilbane concluded that Kelly H. could perform certain other light jobs existing in significant numbers in the national and local economies, including cashier, fast food worker, and inspector/hand packer. R. 45. The ALJ thus determined that Kelly H. was not

---

[1] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[2] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these lifting requirements can perform light work only if he also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1990).

disabled. *Id.* The Appeals Council denied Kelly H.'s request for review, R. 1–4, and this appeal followed.

## III. Discussion

In her three-page brief, Kelly H. asserts that the ALJ wrongly decided her case on four grounds. Pl.'s Br. 2, ECF No. 15; *see also* Compl. 3, ECF No. 2. Each ground consists of one sentence with no citations to the record or caselaw for support.[3] This approach fails to comply with the Court's local rule, *see* W.D. Va. Gen. Rule 4(c) (requiring plaintiff to submit "a brief addressing *why* the Commissioner's decision is not supported by substantial evidence or *why* the decision otherwise should be reversed or the case remanded" (emphasis added)), and is of little assistance to the Court in resolving the issues in the case. The Court expects that future filings will comply with Local Rule 4(c). Nonetheless, construing her assertion as a challenge to ALJ Kilbane's RFC determination, *see* Pl.'s Br. 2 (alleging that the ALJ "did not consider the combined effects of the exertional and non-exertional impairments of the Plaintiff in determining her eligibility for work"), and having reviewed the record, I conclude that the ALJ's decision requires remand.

---

[3] The brief's argument section reads in full:

> A review of the record indicates that the Administrative Law Judge and Appeals Council did not consider the combined effects of the exertional and non-exertional impairments of the Plaintiff in determining her eligibility for work and whether the claimant meets the listings or combination of listings.
>
> The Administrative Law Judge failed to have the Plaintiff evaluated, in person, by any physicians prior to the Plaintiff's hearing.
>
> The finding of the Defendant that the Plaintiff was not disabled was not based upon substantial evidence.
>
> The Administrative Law Judge failed to give sufficient consideration to the medical opinion of the Plaintiff's physicians.

Pl.'s Br. 2. At oral argument, Kelly H.'s counsel acknowledged that the record does not contain a medical opinion from a treating physician or from her nurse practitioner. *See* R. 1633–38.

A claimant's RFC is the most she can do on a regular and continuing basis despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). The ALJ's RFC assessment "must include a narrative discussion describing" how specific medical facts and nonmedical evidence "support[] each conclusion," *Mascio*, 780 F.3d at 636, and why he discounted any "obviously probative" conflicting evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotations and brackets omitted).

ALJ Kilbane's written decision falls short of this standard. First, the ALJ did not reference any of Kelly H.'s testimony from the administrative hearing. *See* R. 39, 43 (discussing portions of Kelly H.'s written submissions to the state agency regarding some of her symptoms and limitations). Notably, Kelly H. testified that her adhesive disease, which the ALJ found severe, R. 37, caused irritable bowel syndrome ("IBS"). R. 62. Treatment notes and other evidence of record document her regular complaints of and treatment for IBS. R. 253, 259 (stating in function report that incontinence affected her sleep); R. 413 (treatment note from July 26, 2010, completed by Brooke Miller, M.D., Kelly H.'s primary care physician, noting that Kelly H. reported having diarrhea up to six times per day); R. 711 (treatment note from February

6

1, 2013, completed by James Mann, M.D., assessing "probabl[e] irritable bowel aggravated by adhesions in the pelvis, which by history has a significant involvement of the colon"); R. 708 (treatment note from March 21, 2013, completed by Vanessa Gregg, M.D., stating that Kelly H. "recently had a GI consult with recommendations for additional medication for IBS related to adhesive disease"); R. 1676 (emergency room report from October 29, 2014, noting that Kelly H. presented with abdominal pain and diarrhea). Kelly H. explained that she went to the bathroom fifteen or sixteen times per day and that her incontinence was so bad that she did "not go far from the house because it gets pretty embarrassing." R. 62. The amount of time she spent in the bathroom fluctuated, and she had tried exercises and therapy to improve the problem to no avail. *Id.* Kelly H.'s husband confirmed that she used the bathroom "probably fifteen times a day" and noted that he had "to fight for the bathroom" when he was at home. R. 75. The VE then testified that no jobs would exist for a person who needed to use the bathroom this frequently. R. 82.

The ALJ, however, did not reference any of this evidence. He did not include a limitation in the RFC to account for these reported symptoms, nor did he explain why no limitation was needed. *See* R. 35–46. The ALJ cannot simply ignore evidence that could have a bearing on the claimant's ability to function in the workplace. *See, e.g.*, 20 C.F.R. §§ 404.1529(a), 416.929(a) ("In determining whether you are disabled, we consider *all your symptoms*, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (emphasis added)); SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment *must* include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (emphasis added)). Kelly H.'s testimony and written statements about the limitations caused by IBS find some support in the treatment notes, and the VE offered

7

unrebutted testimony that those limitation would preclude all work. ALJ Kilbane, however, failed to mention this obviously probative evidence.

Moreover, after presenting a truncated version of both the medical evidence and Kelly H.'s report of symptoms, the ALJ offered an insufficient analysis in support of the RFC finding. Regarding Kelly H.'s credibility, he stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause of the alleged symptoms; however, when evaluated in accordance with [the regulations] . . ., and contrasted with the record as a whole, including the findings made upon diagnostic study and physical examination of the claimant, the claimant's course of medical treatment, the credible medical opinion evidence of record, and the claimant's activities of daily living, the statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible to the extent that the claimant alleges to be "disabled" by them, as the following discussion of the evidence will show.
>
> * * *
>
> The foregoing discussion of the evidence, including the findings made upon physical and diagnostic studies of the claimant, the claimant's course of medical treatment and response to it, the credible medical opinion evidence of record, and the claimant's activities of daily living, does not support the claimant's subjective allegations of disabling symptoms from her impairments. However, the foregoing discussion of the evidence convinces the undersigned that in spite of her subjective allegations, the claimant is capable of performing the reduced range of light exertion specifically set forth above in this Finding by the undersigned.

R. 39, 43. Then, regarding the opinion evidence, the ALJ stated:

> In arriving at a residual functional capacity, the undersigned has given great weight to the opinions of the state agency medical physicians discussed above in this decision (Exhibits 1A, 5A, 6A) because they are offered by acceptable medical sources who have reviewed the record, and their opinions are consistent with the evidence of record at the time they are offered. However, more weight has been given to the opinion of the second state agency physician (Exhibit 5A) because it is offered at a later date than the first consultant's opinion and is, therefore, based upon more of the evidence of record, discussed above in this decision.

R. 43 (citing R. 85–93, 105–28). Last, ALJ Kilbane referenced Kelly H.'s severe impairment of obesity and stated:

8

> In arriving at a residual functional capacity, the undersigned has considered the claimant's obesity in accordance with SSR 02-1p, and knows that obesity can cause limitations in and of itself and/or can aggravate other impairments. However, the foregoing discussion of the evidence contains nothing showing that the claimant's obesity would prevent her from performing the residual functional capacity for the reduced range of light exertion specifically set forth above in this Finding by the undersigned. Rather, the state agency physician (Exhibit 5A) has considered the claimant's obesity in determining that the claimant can perform a reduced range of light exertion, and, as discussed above in this decision, the undersigned has given great weight to this opinion.

R. 44 (citing R. 105–16). These three paragraphs represent the full extent of ALJ Kilbane's RFC analysis.[4] The lack of detail and any substantive discussion of the particulars of Kelly H.'s medical impairments and functional limitations prevent the Court from engaging in meaningful review of the Commissioner's final decision. *See Mascio*, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *cf. Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Given the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court and the district court from undertaking a meaningful review of the finding that Radford did not satisfy Listing 1.04A." (internal quotation marks omitted)).

Most tellingly, the above discussion does not go beyond mere boilerplate statements, and indeed ALJ Kilbane did not reference any specific examples in support of these broad conclusions. *Cf. Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016) (finding an ALJ's evaluation of the opinion evidence insufficient when the ALJ assigned weight based on the opinion's consistency or inconsistency with boilerplate terms such as "the objective evidence" or "the claimant's treatment history" or "other opinions of record"). This shortcoming is most prominent in the ALJ's evaluation of Kelly H.'s credibility. When conducting a credibility

---

[4] The ALJ's step-three discussion of the listings is similarly lacking in any meaningful analysis of the medical evidence. *See* R. 38.

9

assessment, the ALJ must consider all of the evidence in the record, including the claimant's other statements, her daily activities, her treatment history, any medical-source statements, and the objective medical evidence, *Craig*, 76 F.3d at 595, and must give specific reasons, supported by relevant evidence in the record, for the weight assigned to the claimant's statements, *Eggleston v. Colvin*, No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013).

ALJ Kilbane failed to provide specific reasons. For example, the ALJ found that Kelly H.'s activities of daily living belied her statements about her symptoms and functioning, but other than summarizing her function report, he offered no further analysis. Such an approach engenders multiple problems. First, the activities described in Kelly H.'s function report and cited by the ALJ are very minimal, *see* R. 43 (citing R. 252–59) (identifying, among other things, Kelly H.'s reports of requiring assistance getting dressed and using the bathroom, the latter of which required her to have "bars" installed in her home; doing chores such as folding laundry, washing dishes, and sweeping; shopping two to four times per week; and watching television and reading), and thus are not a good reason to reject her complaints of significant functional limitations, *see* R. 257 (indicating problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using hands and reporting an ability to lift five to ten pounds, walk ten minutes with breaks, and stand for thirty minutes with breaks). *See, e.g., Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *15 (W.D. Va. Sept. 12, 2014) (compiling cases supporting the proposition that "a claimant's ability to perform modest activities of daily living is not a reason to reject claims that impairments cause disabling limitations"); *Miller v. Astrue*, No. 5:11cv55, 2012 WL 3068732, at *4 (W.D. Va. July 24, 2012) ("[M]inimal, transitory, and inconsistent aspects of daily living may have little or no bearing on a

claimant's ability to function full time in a work setting."), *adopted by* 2012 WL 6151980 (W.D. Va. Dec. 11, 2012).

Moreover, the Fourth Circuit has recently explained that "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods*, 888 F.3d at 694 (citing *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017)). ALJ Kilbane omitted certain qualifiers that further demonstrate the limited extent of Kelly H.'s daily activities. For instance, the ALJ noted that she "prepared meals by herself about three days of the week," R. 43, but he did not acknowledge her statement that she spent no more than "five to fifteen minutes" fixing simple items such as sandwiches and prepared meals, R. 254. The ALJ also noted that she "went shopping two to four times a week to buy groceries, necessities, and medicines," R. 43, but he did not include Kelly H.'s explanation that she spent no more than fifteen minutes at a time in the store, R. 255. Additionally, the ALJ remarked that Kelly H.'s hobbies and interests included "being an avid outdoor person, hiking, camping, fishing, drag races, working on cars, reading, and watching television." R. 43. The ALJ omitted, however, that Kelly H. wrote that she did not "do most all outdoor activities anymore," but instead just read or watched television. R. 256. And, as detailed above, ALJ Kilbane did not reference any of Kelly H.'s testimony from the administrative hearing, during which she described herself as a "hermit" and stated that she reclined at least six hours a day. R. 67, 72. Last, "the ALJ provided no explanation as to how [Kelly H.'s] particular activities—or any of the activities depicted by [Kelly H.]—showed that [she] could persist through an eight-hour workday." *Brown*, 873 F.3d at 263. Thus, Kelly H.'s activities of daily living do not support ALJ Kilbane's credibility evaluation.

In finding Kelly H. not entirely credible, ALJ Kilbane also referenced "the findings made upon physical and diagnostic studies of the claimant, the claimant's course of medical treatment and response to it, [and] the credible medical opinion evidence of record." R. 43. Although this reasoning may be sufficient in the abstract, ALJ Kilbane did not provide any specific examples to support his conclusion, and the record contains probative evidence that undermines his conclusions. For one, ALJ Kilbane briefly summarized Kelly H.'s history of neck surgery and referenced relevant imaging from late 2013, R. 40 (citing R. 506–694), but his discussion of "multilevel degenerative changes," R. 42, did not acknowledge the further degeneration indicated by the May 2015 imaging. *Compare* R. 668–69 (CT scan from September 25, 2013), *with* R. 1641 (MRI from May 1, 2015). The same problem exists with the ALJ's discussion of Kelly H.'s knee impairment. *See* R. 40 (citing R. 695–730); *compare* R. 721 (X-ray of bilateral knees from December 31, 2013), *with* R. 1752–53 (MRI of the right knee from December 20, 2014, which the ALJ did not discuss).

In sum, Kelly H. alleges disability because of myriad impairments, some of which the ALJ considered and others he did not. The ALJ presented a very cursory overview of a voluminous record and crafted an RFC that did not account for all of the relevant limitations identified in the evidence, both objective and subjective. As explained, this is most evident in the ALJ's evaluation of Kelly H.'s credibility, which the ALJ discounted by offering boilerplate reasoning devoid of reference to any specific examples. By selectively reciting the evidence without providing an adequate explanation for his conclusions, the ALJ "failed to build an accurate and logical bridge from the evidence he recounted to his conclusion about [Kelly H.'s] residual functional capacity." *Woods*, 888 F.3d at 694 (internal quotation marks omitted). Accordingly, remand is required.

IV. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. Accordingly, I respectfully recommend that the presiding District Judge **GRANT** Kelly H.'s Motion for Summary Judgment, ECF No. 14, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 18, **REVERSE** the Commissioner's final decision, **REMAND** the case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** the case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: June 27, 2018

Joel C. Hoppe
United States Magistrate Judge